# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MARLON JACKSON, individually and on behalf of similarly situated individuals, | )<br>)<br>) |
| *Plaintiff,* | No. 24-cv-06577 |
| v. | Hon. Rebecca R. Pallmeyer |
| NFI INTERACTIVE LOGISTICS, LLC, a New Jersey limited liability company, and NFI INDUSTRIES, INC., a Delaware corporation, | |
| *Defendants.* | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Dated: October 7, 2024

Evan M. Meyers
Paul T. Geske
Andrew T. Heldut
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
emeyers@mcgpc.com
pgeske@mcgpc.com
aheldut@mcgpc.com

*Counsel for Plaintiff and the putative class members*

I.  **<u>INTRODUCTION</u>**

Plaintiff brings claims against Defendants for violating his privacy rights under Section 25(c)(1) of Illinois' Genetic Information Privacy Act ("GIPA") by unlawfully requesting his genetic information as part of a pre-employment physical examination. 410 ILCS 513/25(c)(1). Defendants have moved to dismiss Plaintiff's claims under Rule 12(b)(6) based on a single theory: that Defendants are an interstate carrier subject to federal safety regulations promulgated by the Department of Transportation ("DOT") and Federal Motor Carrier Safety Administration ("FMCSA"), so Plaintiff's GIPA claims are entirely preempted under federal law. (*See generally* Dkt. 17, hereinafter the "Motion to Dismiss" or "Motion"). Defendants' Motion is both procedurally improper and wrong on the merits.

Under Seventh Circuit precedent, it is procedurally improper for Defendants to raise the affirmative defense of preemption through a Rule 12(b)(6) motion. And on the merits, Plaintiff's GIPA claims are *not* preempted, as they arise out of state law privacy protections that are independent of Defendants' obligations under federal regulations. Therefore, Plaintiff's claims are not contrary to or otherwise preempted under federal law. Even if the Court were to consider the substance of Defendants' preemption arguments at this early stage, none of the three types of federal preemption (express, field, and conflict) apply here.

First, express preemption is inapplicable, because none of the FMCSA or DOT rules, regulations, and guidelines cited in Defendants' Motion contain a provision that clearly and expressly preempts state genetic privacy laws.

Second, field preemption fares no better. "Field preemption is rare," and only "applies when federal law occupies a field of regulation so comprehensively that it has left no room for supplementary state legislation." *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639,

1

651-52 (7th Cir. 2019). That is not true for GIPA. Moreover, although the FMCSA regulations that Defendants cite in their Motion do not contain any express preemption provisions, other sections that aren't at issue here do, such as those relating to testing for controlled substance and alcohol use. 49 C.F.R. § 382.109. Congress's choice "to displace state law only in certain specified, express preemption provisions" demonstrates that Congress did *not* intend to "displace *all* state regulation" in this area. *Nelson*, 928 F.3d at 652 (emphasis in original).

Third, conflict preemption does not apply, because it is neither impossible nor even difficult for Defendants to comply with both GIPA and FMCSA regulations. Compliance is straightforward: simply conduct the medical exam, as a condition of employment, without requiring that the applicant disclose protected "genetic information." None of the FMCSA regulations that Defendants cite reference or even relate to genetics or genetic information, let alone require employers to request genetic information from applicants or employees. Indeed, Defendants concede that the federally-required physical examination process contains no specific inquiries eliciting family medical history. (Mot. at 7). Rather, the regulations and guidelines make clear that the medical examiners' purpose is to assess the driver's *own* physical and medical condition, and not the driver's family members' inheritable diseases and disorders (*i.e.* genetic information). GIPA's protections are thus independent of FMCSA and DOT regulatory requirements, and compliance does not lead to any conflict.

Accordingly, Plaintiff's GIPA claims are not preempted under DOT or FMCSA regulations. Defendants' Motion should therefore be denied in its entirety.

II.     **FACTUAL BACKGROUND**

Defendants are a leading third-party logistics provider. (First Amended Class Action Complaint ¶ 1, Dkt. 14, hereinafter the "Complaint" or "FAC"). In or around August 2014,

Plaintiff applied for a job with Defendants and was hired for a driver position in Illinois. (*Id.* ¶ 36). As part of the application and hiring process, and as a condition of employment, Defendants required Plaintiff to submit to a mandatory physical examination conducted by a third-party medical provider. (*Id.* ¶ 37). Additionally, Defendants required Plaintiff to submit to regular physical examinations during the course of his employment with Defendants. (*Id.* ¶ 38). For example, in or around 2021, as a condition of his ongoing employment with Defendants, Plaintiff was required to answer questions concerning his family medical history, including whether Plaintiff's family members had a history of inheritable conditions such as high blood pressure, heart disease, diabetes, and other medical conditions. (*Id.* ¶ 40).

Plaintiff subsequently brought suit against Defendants under Section 25(c) of GIPA, 410 ILCS 513/25(c), which prohibits employers, such as Defendants, from directly or indirectly soliciting, requesting, requiring, or purchasing genetic information of a person as a condition of employment or preemployment application. (*Id.* ¶¶ 2, 22, 56).[1] GIPA specifically defines "genetic information" by reference to HIPAA, 45 C.F.R. § 160.103, as including the manifestation of a disease or disorder in family members of an individual—exactly the information Plaintiff alleges was solicited and requested by Defendants as part of Plaintiff's preemployment application and as a condition of employment. (*Id.* ¶¶ 3, 37–41, 57).

### III. LEGAL STANDARD

Where a defendant moves to dismiss a complaint under Federal Rule 12(b)(6), the motion does not test the merits of the plaintiff's claims; rather it "tests only the legal sufficiency of the

---

[1] In interpreting GIPA's "directly or indirectly" statutory language, Judge Rowland recently interpreted this to encompass solicitations performed by third-party medical providers on behalf of employer-defendants. *See Ginski v. Ethos Seafood Group, LLC, et al.*, 1:23-CV-16402, 2024 WL 4265249, at *8 (N.D. Ill. Sept. 23, 2024) ("To the extent that Defendants are suggesting a third party performed the examinations at issue, that does not appear to save them from GIPA's reach.")

complaint." *Hanley v. Green Tree Serv., LLC*, 934 F. Supp. 2d 997, 980 (N.D. Ill. 2013) (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)). When considering a Rule 12(b)(6) motion, the court must construe the complaint "in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the plaintiff's] favor." *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis.*, 657 F.3d 496, 502 (7th Cir. 2011). A complaint will survive a Rule 12(b)(6) motion as long as it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief." *Supreme Auto Transport v. Arcelor Mittal*, 238 F. Supp. 3d 1032, 1036 (N.D. Ill. 2017) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007)).

Pleadings do not, however, need to "anticipate or attempt to circumvent affirmative defenses" such as "preemption." *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010). Indeed, "courts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

IV. **ARGUMENT**

    A. **Preemption Is An Affirmative Defense, And Defendants' Attempts To Raise Preemption Through A Rule 12(b)(6) Motion Are Procedurally Improper.**

As an initial matter, Defendants' preemption arguments are not properly before the Court. In the Seventh Circuit, preemption "is an affirmative defense upon which the defendants bear the burden of proof." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019) (holding that the district court "erred by penalizing [the plaintiff] for failing to anticipate

an affirmative defense in her complaint and dismissing the action based on . . . preemption"); *see also Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1678 (2019) (observing that preemption is a "demanding" affirmative defense). A plaintiff "need not anticipate or attempt to circumvent affirmative defenses" in their complaint. *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010); *Branson v. Caterpillar, Inc.*, 23 CV 14329, 2024 WL 3823157, at *5 (N.D. Ill. Aug. 14, 2024) (same). Additionally, an affirmative defense of preemption "typically turn[s] on facts not before the court at [the Rule 12(b)(6)] stage." *Brownmark Films, LLC*, 682 F.3d 687, 690 (7th Cir. 2012). Defendants' effort to shoehorn an affirmative defense into a Rule 12(b)(6) motion is therefore "procedurally improper." *Benson*, 944 F.3d at 645; *Luna Vanegas v. Signet Builders, Inc.*, 46 F. 4th 636, 640-41 (7th Cir. 2022).

Adding to this error, Defendants' Motion also improperly attaches numerous materials outside the boundaries of Plaintiff's Complaint. Plaintiff's Complaint neither references nor relies upon many of the exhibits attached to Defendants' Motion. For instance, to undermine Plaintiff's allegations, Defendants attempt to introduce extraneous evidence through the Declaration of Lee Robledo ("Robledo Declaration," Dkt. 18), Defendants' Vice President of Safety Technology, Innovation & Accident Investigations. Mr. Robledo's Declaration itself attaches a single Medical Examination Report Form from 2022, and Defendants argue that, based on this form, no family medical history questions were asked because the form only requested Plaintiff's *own* medical conditions. (Mot. at 7; Dkt. 21, Ex. D.) Defendants also suggest that this is the only relevant form at issue. *Id*. In applying the Rule 12(b)(6) standard, a court can only consider external documents attached to a motion if they are "referred to in the plaintiff's complaint and are central to [his] claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Here, Plaintiff's Complaint makes no reference to any form, questionnaire, report, or any other written

instrument. And it cannot be determined at this early stage in the pleadings whether such written records are even relevant, because Plaintiff brings claims based on an unlawful request or solicitation of his genetic information, which can be made orally and/or may involve other medical forms – including from previous examinations from previous years – requiring additional fact-finding through discovery. Because nearly all of Defendants' arguments are reliant upon matters outside the Amended Complaint, Defendants' Motion must be denied outright.[2]

Given that a full analysis of preemption requires a highly fact-based inquiry, it is an issue best left for the summary judgment stage, following an opportunity for discovery. *See, e.g., Smith v. CSX Transp., Inc.*, 247 F. Supp. 3d 952, 956 (N.D. Ill. 2017). Defendants' preemption arguments require discovery regarding, among other issues, Defendants' policies and procedures relating to physical examinations, requests for genetic information, and the relationships between Defendants and their contracted-for medical examiners. This discovery will place the Court in a better position to know what impact, if any, GIPA compliance would have on Defendants' mandatory medical physical examinations. *See Karling v. Samsara Inc.*, 610 F. Supp. 3d 1094, 1100 (N.D. Ill. 2022) (rejecting defendant's preemption-related arguments relating to the DOT regulations due to the "fact-based nature of a conflict preemption inquiry and its usual inappropriateness on a motion to dismiss"). It would be inappropriate to dismiss Plaintiff's GIPA claim based on preemption at the motion to dismiss stage, before Plaintiff has had the opportunity to develop the factual record.

**B.      Plaintiff's GIPA Claims Are Not Preempted.**

Even if the Court considers Defendants' preemption arguments on the merits, no form of preemption applies here. There are three types of federal preemption: express, field, and conflict. *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 646 (7th Cir. 2019). Courts evaluate

---

[2] Defendants would be free to reassert their affirmative defenses properly via their Answer or at the summary judgment stage with the benefit of discovery.

preemption issues "through a lens that presumes that [] state law has not been preempted." *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1046 (7th Cir. 2013) (emphasis added); *McHenry Cnty. v. Kwame Raoul*, 44 F.4th 581, 587 (7th Cir. 2022) ("The federal government's advantage under the Supremacy Clause is 'an extraordinary power in a federalist system,' and it is 'a power that we must assume Congress does not exercise lightly.'").

### i. Express preemption does not apply.

Express preemption occurs "when Congress clearly declares its intention to preempt state law." *Nelson*, 928 F.3d at 646. Courts look to the statutory text to determine whether Congress has "declare[d] its intention to preempt state regulation through a direct statement in the text of federal law." *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 546 (7th Cir. 2020). Importantly, courts "must assume that Congress did not intend to supersede [the historic police powers of the states] unless the language of the statute expresses a clear and manifest purpose otherwise." *Patriotic Veterans*, 736 F.3d at 1046.

Here, Defendants fail to point to anything in the FMCSA and DOT regulations that amounts to a "clear and manifest" expression of Congress's intent to preempt state genetic privacy laws. (*See* Mot. at 11-12). Indeed, the opposite is true. As acknowledged by Defendants, Congress has directed the Secretary of Transportation to consider "[s]tate laws and regulations on commercial motor vehicle safety, to *minimize* their unnecessary preemption." (Mot. at 12, citing 49 U.S.C. § 31136(c)(2)(B) (emphasis added)). In other words, although Congress granted the DOT and FMCSA authority to regulate commercial motor vehicle safety, Congress also intended to avoid unnecessary preemption. Given the lack of clear preemption language, the DOT and FMCSA regulations cannot be understood to expressly preempt state genetic privacy laws or laws restricting employers' ability to request genetic information.

Moreover, Defendants also fail to quote or cite any language in the regulations that requires carriers to request genetic information from employees. None of the regulations cited in Defendants' Motion mandate that genetic information be collected by medical examiners as part of physical examinations as a condition of employment. *See, e.g.*, 49 C.F.R. § 390; 49 C.F.R. § 391 *generally*, and 49 C.F.R. § 391.11, 41, 43 and 45. Nor are there any specific measures governing genetic testing or inquiries about genetic information. Defendants acknowledge in their Motion that the federally-required physical examination asks only about the *driver's* own health (Mot. at 7, citing to the MCSA-5875 form, codified at 49 C.F.R. § 391.43(f)). While the regulations relate to drivers' health and safety in a general sense, they are silent with respect to genetic information and privacy.

GIPA, on the other hand, is solely concerned with the privacy of genetic information and has nothing to do with drivers' safety. The subject matter of Section 25 of GIPA is limited to the manner in which genetic information may be used, requested, or disclosed. These subjects do not relate to carrier safety. *See Rogers v. BNSF Ry. Co.*, 19 C 3083, 2019 WL 5635180, at *4 (N.D. Ill. Oct. 31, 2019) (holding that federal Interstate Commerce Commission Termination Act did not preempt Illinois' Biometric Information Privacy Act, because "[t]he BIPA has nothing do to with regulating rail transportation . . . . The statute imposes no limits or restrictions on the movement of property or persons. Rather, it imposes disclosure, consent, and recordkeeping requirements related not to transportation of persons or property but rather to certain types of information."). Here, the medical examiners' job is *not* to probe drivers' family medical histories and other genetic information, but to diagnose drivers' *own* conditions to determine whether they can operate commercial motor vehicles safely. 49 U.S.C. § 31136(a)(3). In other words, the medical

8

qualification process should be limited to evaluating only the driver's medical conditions and disorders, not those of their family members.

Finally, even if the Court were to find that FMCSA and DOT regulations cover certain subjects similar to those of GIPA, that finding would not lead to express preemption. In order to show that federal regulations "cover" the same subject matter as state law, "the party claiming preemption" must "'establish more than that [federal regulations] touch upon or relate to [the] subject matter' of the state law; 'pre-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law.'" *Rogers*, 2019 WL 5635180, at *4 (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)). Thus, in order for Defendants to show that Plaintiff's GIPA claims are expressly preempted, Defendants must establish that the relevant federal regulations "substantially subsume" GIPA's protections for genetic information.

Defendants cannot meet this considerable burden. The protections in Section 25(c) of GIPA relate only to the privacy of genetic information – while FMCSA and DOT regulations do not – and prohibit certain requests for genetic information—which FMCSA and DOT regulations do not require. *See Crumpton v. Octapharma Plasma, Inc.*, 513 F. Supp. 3d 1006, 1013 (N.D. Ill. 2021) ("Express preemption is inapplicable," because "BIPA's requirements are only triggered by the collection of biometric identifiers, which the [Medical Device Amendments] does not mandate.").

At most, federally-required medical examinations merely "touch upon" subjects similar to those of GIPA, which is insufficient for preemption. *See Rogers*, 2019 WL 5635180, at *4 ("[defendant] cites only a regulation that requires it to use physical security measures to ensure that unauthorized persons do not gain access to secure areas in railroad facilities—a regulation that does not on its face require collection of biometric information, let alone prescribe how it is to be collected or stored. This is far too general to have a preemptive effect vis-à-vis the BIPA. In the

9

words of *Easterwood*, the regulation at most 'touches upon' the same subject matter as the BIPA (and, frankly, even that is a stretch); it does not 'substantially subsume' the subject matter of the BIPA") (citing *Easterwood*, 507 U.S. at 664).

In sum, based on the current record, there is no basis to conclude that FMCSA and DOT regulations subsume or otherwise expressly preempt GIPA.[3]

### ii. Field preemption is also inapplicable.

Defendants also cannot satisfy the requirements for field preemption. Field preemption is a "rare" form of preemption occurring only "when federal law occupies a field of regulation so comprehensively that it has left no room for supplementary state legislation." *Nelson*, 928 F.3d at 651-52 (internal quotations omitted). Under Supreme Court and Seventh Circuit precedent, "[f]ield preemption is confined to only a few areas of the law," none of which are involved here. *Id.* at 652.

As an initial matter, "the absence of language indicating an intent to occupy the field weighs heavily, of course, 'in favor of holding that it was the intent of Congress *not* to occupy the field.'" *Id.* (quoting *Frank Bros. v. Wisconsin Dep't of Transp.*, 409 F.3d 880, 891 (7th Cir. 2005)). And here, such language is absent. To the Contrary, the Secretary of Transportation is directed to avoid preemption where possible when prescribing regulations. 49 U.S.C. § 31136(c)(2)(B).

That aside, nothing else in the DOT or FMCSA regulations implies that Congress intended to occupy the field of genetic privacy. As discussed above, there are no provisions in FMCSA and DOT regulations referencing "genetic information" or genetic privacy. Nor does it appear that Defendants' requests for family medical history or genetic information (as alleged) would fall under FMCSA's guidelines for "physical qualification standards,"[4] given that medical examiners

---

[3] At the very least, more discovery is needed to assess any overlap between the federal regulations and the forms and questions actually used and the individuals conducting the health exams.
[4] See 49 C.F.R. § 391.41.

10

are directed to evaluate and diagnose a drivers' *own* health for the sole purpose of determining whether the driver is physically qualified to operate a motor vehicle, rather than inquiring about the driver's genetic information—conduct which is unlawful under both GIPA and its federal-counterpart, the Genetic Information Nondiscrimination Act ("GINA"), 42 U.S.C. § 2000ff *et seq.*

Although Congress chose *not* to displace all state laws through FMCSA and DOT regulations, it did decide to preempt contrary state laws in certain narrow circumstance not at issue in this case. Specifically, the regulations mandate testing and other requirements related to controlled substance and alcohol use, and preempt state laws to the contrary. 49 C.F.R. § 382.109. Congress's choice "to displace state law only in certain specified, express preemption provisions" demonstrates that Congress did not intend to "displace *all* state regulation" in this area. *Nelson*, 928 F.3d at 652 (emphasis in original).

Therefore, Defendants cannot show that Congress, through FMCSA regulations, has intended to occupy the entire field of genetic information privacy such that GIPA is preempted. *Crumpton*, 513 F. Supp. 3d 1006, 1014.

### iii. Compliance with GIPA does not conflict with federal regulations, so conflict preemption does not apply.

Finally, there is no basis for conflict preemption because federal regulations are not an obstacle to compliance with GIPA. (Mot. at 8-11). Defendants argue that "it is impossible for NFI to comply with GIPA's edicts without violating its duties as a motor carrier under the FMCSR . . . . this impossibility arises because subpart E of the FMCSR requires commercial drivers to undergo a medical examination[.]" (Mot. at 9, citing to 49 C.F.R. § 391.11(a), (b)(4)). Defendants are wrong. For conflict preemption to apply, the proponent of preemption "must show either that it would be 'impossible' . . . to comply with both state and federal law or that state law . . . constitutes an 'obstacle' to satisfying the purpose and objectives of Congress." *Holcomb*, 965 F.3d at 547

11

(alterations in original) (quoting *Nelson*, 928 F.3d at 650). To meet this standard, Defendants bear the burden of demonstrating that compliance with GIPA would do "'major damage' to clear and substantial federal interests." *Id.* (citing *Patriotic Veterans*, 736 F.3d at 1049).

Here, however, nothing about GIPA frustrates compliance with applicable federal regulations, or vice versa. Indeed, Plaintiff's claims neither arise out of nor relate to federal regulations, and Plaintiff is not claiming that Defendants violated GIPA simply by carrying out its obligations under federal law. Put simply, FMCSA regulations merely "prescribe minimum safety standards for commercial motor vehicles." 49 U.S.C.A. § 31136(a). The regulations do not require Defendants to violate GIPA by obtaining family medical history information or other protected genetic information from drivers; rather, Defendants' medical examiners need only evaluate the driver's *own medical conditions* to determine whether they are physically qualified to operate a commercial motor vehicle. Medical examiners are perfectly capable of doing so – in compliance with federal regulations – without requiring or probing a driver's genetic information. As such, "state law and federal law can exist in harmony here." *Nelson*, 928 F.3d at 651.

Critically, even if GIPA did not exist, Defendants would still have to comply with GINA – the federal counterpart to Illinois' GIPA – which, just like GIPA, also prohibits employers from "request[ing], requir[ing], or purchas[ing] genetic information with respect to an employee or a family member of the employee" with certain narrow exceptions. 42 U.S.C. § 2000ff-1(b); *see also Lee v. City of Moraine Fire Dept.*, No. 3:13-cv-222, 2015 WL 914440, at *1 (S.D. Ohio Mar. 3, 2015) (granting summary judgment to the plaintiff on their GINA claim arising out of an OSHA questionnaire requesting information concerning the plaintiff's family history of heart disease). Indeed, the DOT is well aware of GINA and acknowledges that "[i]t will usually be unlawful for an employer to get someone's genetic information or to reveal someone's genetic information. An

employer may never use genetic information to make an employment decision, because genetic information doesn't tell the employer anything about someone's current ability to work."[5]

Defendants nonetheless argue that requirements in *other* federal law "must yield to the DOT's physical examination requirements." (Mot. at 8). To the extent that Defendants argue that they are excused from compliance with GINA if doing so would conflict with FMCSA regulations, the cases Defendants cite do not support that proposition. Defendants' Motion cites to a few cases involving other, unrelated federal statutes such as the Americans with Disabilities Act ("ADA"), where compliance with the DOT and the ADA were not actually found to be in direct conflict. (Mot. at 8) (citing *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 974 (7th Cir. 2000). In *Bay*, the plaintiff sued under the ADA, and the Seventh Circuit held that the defendant was entitled to rely on the opinion of its physician, where the defendant's own physician was equivocal as to the defendant's ability to meet DOT standards, and where the defendant was prevented by federal law from allowing its employees to drive commercial motor vehicles unless a physician applying the DOT standards had found them fit for duty. In reaching this conclusion, the Seventh Circuit explicitly stated that "nothing in the ADA purports to change that obligation, see *Thoms v. ABF Freight Sys., Inc.*, 31 F.Supp.2d 1119, 1127 (E.D.Wis.1998) ("The ADA does not override health and safety requirements established under other Federal laws.")".[6] Here, the application of GIPA would not disrupt and frustrate the system in place to ensure that commercial motor vehicle drivers are medically qualified to do their job. Further, because Defendants are already required to comply

---

[5] Genetic Information Nondiscrimination Act of 2008 Memorandum, https://highways.dot.gov/civil-rights/programs/eeo/genetic-information-nondiscrimination-act-2008.
[6] *See also* Mot. at 2, citing *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 573 (1999) (holding that there was no violation of the ADA because the defendant had the right to insist and rely upon a specific, substantive federal safety regulation for the employees' firing, i.e. DOT's vision standards). In *Albertson's*, the Court was clear that "[w]hen Congress enacted the ADA, it recognized that federal safety rules would limit application of the ADA as a matter of law." *Id.*

13

with GINA, there is no burden on Defendants – nor any conflict with federal law – from requiring Defendants to also comply with GIPA.

As Judge Coleman recently recognized in another GIPA case, GIPA does not conflict with federal law merely because it imposes its own, independent standards governing employers' use of, and requests for, genetic information. *McKnight v. United Airlines, Inc*., No. 23-cv-16118, 2024 WL 3426807, at *5 (N.D. Ill. July 16, 2024). Rather, "GIPA appears to acknowledge the federal 'floor' for genetic information treatment by requiring employers to 'treat genetic testing and genetic information in such a manner that is consistent with the requirements of federal law,' but goes on to prescribe its own, perhaps more stringent, standards." *Id.* at *5 n.1. This does not, however, mean that federal law is in conflict with GIPA, as Defendants contend. "The fact that a state has more stringent regulations than a federal law does not constitute conflict preemption. Otherwise, every time a state chose to apply a more rigorous standard when regulating conduct within the state, the result would be impermissible. We know, however, that states frequently, and without preemption by federal law, create more stringent laws[.]" *Id*. at *5 (quoting *Patriotic Veterans*, 736 F.3d at 1049).

Defendants point to one other court that has found one of the provisions of GIPA to be preempted by federal law in the context of a request for medical information. (Mot. at 8, citing *Branson v. Caterpillar, Inc.,* No. 23 CV 14329, 2024 WL 3823157, at *5 (N.D. Ill. Aug. 14, 2024)). But in *Branson,* the preemption related to Section 25(e) of GIPA, which prohibits the use of genetic information "in furtherance of a workplace wellness program." 410 ILCS 513/25(e). The court reasoned that if a workplace wellness program under GIPA is a part of an employer benefit plan,

Section 25(e) "relates" to a plan and is therefore preempted by ERISA.[7] *Id*. The court cited to the EEOC Final Rule on Employer Wellness Programs and the Genetic Information Nondiscrimination Act, 81 Fed. Reg. 31144 n.14 (May 17, 2016) (amending 29 C.F.R. § 1635) (describing a wellness program that may need to be ERISA compliant). *Id.* Here, Defendants do not – and cannot – cite to any guidance from the EEOC or the GINA federal statute that physical examinations must be compliant with DOT or FMCSA regulations, and the reason is clear: there is no conflict, because GIPA and GINA only relate to the privacy of genetic information, and do not interfere with assessing whether drivers are medically qualified to do their job. The Supreme Court's decision in *Mutual Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472 (2013), is also inapposite. (Mot. at 10.) There, the Supreme Court found a New Hampshire law requiring certain warnings on its labels to be preempted, because the state law "imposed a duty on [the manufacturer] not to comply with federal law." *Id.* at 475 (emphasis in original). Here, Defendants cannot point to any inconsistency in FMCSA regulations and GIPA and makes no showing that compliance with FMSCA somehow interferes with complying with GIPA.[8] In sum, there is no conflict in requiring Defendants to comply with GIPA, GINA, and federal law requirements under the FMCSA. Defendants' arguments on conflict preemption grounds should be rejected.

V. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety.[9]

---

[7] The court reasoned that, "[a]s pled in the amended complaint and based on the undisputed assertion that the wellness program fell under the company's ERISA plan, Branson's claim under Section 25(e) of GIPA is preempted by ERISA." *Id.*

[8] Compare with *Stuve v. Kraft Heinz Co*., 21-CV-1845, 2023 WL 184235, at *6 (N.D. Ill. Jan. 12, 2023) ("Because [Defendant] has not shown that it is impossible for it to comply with both federal and state law, nor that Plaintiffs' the consumer fraud laws here stand as an obstacle to fully achieving the goals of Congress, the court declines to find Plaintiffs' claims preempted at this time.")

[9] Should the Court grant Defendants' Motion in whole or in part, Plaintiff requests that any such dismissal be made without prejudice to provide Plaintiff with an opportunity to cure any defects in his pleading.

Dated: October 7, 2024

Respectfully submitted,

MARLON JACKSON, individually and on behalf of similarly situated individuals

By: /s/ *Andrew T. Heldut*
One of Plaintiff's Attorneys

Evan M. Meyers
Paul T. Geske
Andrew T. Heldut
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
emeyers@mcgpc.com
pgeske@mcgpc.com
aheldut@mcgpc.com

*Counsel for Plaintiff and the putative class members*

# **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on October 7, 2024, I caused the foregoing *Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint* to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ *Andrew T. Heldut*